# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

RICO ISAIH HAIRSTON,

      Plaintiff,

  v.                                  Case No. 2:18-cv-826
                                      Judge Michael H. Watson
                                      Magistrate Judge Chelsey M. Vascura

SHELBIE SMITH, *et al.*,

      Defendants.


## ORDER and REPORT AD RECOMMENDATION

    Plaintiff, Rico Isaih Hairston, a state inmate who is proceeding without the assistance of counsel, brings this civil rights action under 42 U.S.C. § 1983 against a number of employees at Pickaway Correctional Institution ("PCI") and Correctional Reception Center ("CRC"), alleging that Defendants violated his Fourteenth Amendment right to due process and equal protection of the law. This matter is before the Court for the initial screen of Plaintiff's Complaint under 28 U.S.C. §§ 1915(e)(2) and 1915A to identify cognizable claims and to recommend dismissal of Plaintiff's Complaint, or any portion of it, which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2); *see also McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997). Having performed the initial screen, for the reasons that follow, the undersigned **RECOMMENDS** that the Court **DISMISS** this action pursuant to § 1915(e)(2) for failure to state a claim on which relief may be granted and **DENY AS MOOT** Plaintiff's Motion for a Temporary Restraining Order (ECF No. 2) and his Motion for the Clerk to Make Service Copies (ECF No. 3).

This matter is also before the Court for consideration of Plaintiff's motions for leave to proceed *in forma pauperis* under 28 U.S.C. § 1915(a)(1) and (2) is **GRANTED**. (ECF Nos. 1 and 7.) Plaintiff is required to pay the full amount of the Court's $350 filing fee. 28 U.S.C. § 1915(b)(1). Plaintiff's certified trust fund statements reveal that he currently possesses the sum of $25.18 in his prison account, which is insufficient to pay the full filing fee.

Pursuant to 28 U.S.C. § 1915(b)(1), the custodian of Plaintiff's inmate trust accounts (Inmate Id Number A741324) at Toledo Correctional Institution is **DIRECTED** to submit to the Clerk of the United States District Court for the Southern District of Ohio as an initial partial payment, 20% of the greater of either the average monthly deposits to the inmate trust account or the average monthly balance in the inmate trust account, for the six-months immediately preceding the filing of the Complaint.

After full payment of the initial, partial filing fee, the custodian shall submit 20% of the inmate's preceding monthly income credited to the account, but only when the amount in the account exceeds $10.00 until the full fee of $350.00 has been paid to the Clerk of this Court. 28 U.S.C. § 1915(b)(2). *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

Checks should be made payable to: Clerk, United States District Court. The checks should be sent to:

> Prisoner Accounts Receivable
> 260 U.S. Courthouse
> 85 Marconi Boulevard
> Columbus, Ohio 43215

The prisoner's name and this case number must be included on each check.

It is **ORDERED** that Plaintiff be allowed to prosecute his action without prepayment of fees or costs and that judicial officers who render services in this action shall do so as if the costs

had been prepaid.  The Clerk of Court is **DIRECTED** to mail a copy of this Order to Plaintiff and the prison cashier's office.  The Clerk is further **DIRECTED** to forward a copy of this Order to the Court's financial office in Columbus.

**I.**

According to the Complaint, on February 28, 2018, Plaintiff was placed in segregation for a threatening letter he had been accused of sending.  Plaintiff was issued a conduct report on March 5, 2018, and a Serious Misconduct Panel ("SMP") disciplinary hearing was held on March 12, 2018.  The hearing officers explained Plaintiff's rights to him, and Plaintiff said he was not guilty and that he had been set up.  Plaintiff alleges that the deliberations were postponed for further investigation.  According to Plaintiff, the fact that he has remained in segregation beyond twenty-one days violates his due process rights and Ohio Administrative Code 5120-9-08.1.  Plaintiff alleges that his SMP hearing was resumed on April 10, 2018.  Plaintiff alleges that the SMP declined to make a ruling based upon the lack of evidence and sent this matter back to the Rules Infraction Board ("RIB") for consideration.  According to Plaintiff, Defendant CRC Warden Shelbie Smith told him on April 13, 2013, that he might be receiving outside charges.  This prompted Plaintiff to file a grievance, which he alleges was not handled properly "because of [his] sex case that [he] is incarcerated for."  (Pl.'s Compl. ¶¶ 24-26, ECF No. 1-1.)

Plaintiff alleges that a third SMP hearing was held on April 19, 2018.  Plaintiff states that prior to going on the record, Defendant May (Warden's assistant at CRC), told him that he was the only person they had seen three times, that they were going to recommend extended restrictive housing ("ERH"), and that the warden had told the SMP to find Plaintiff guilty.  Plaintiff alleges that he filed an appeal that day.

The SMP's decision was affirmed on May 25, 2018, in a letter from Defendant Lauren Chalupa, which states, "The Division of Legal Services has reviewed this case for compliance with applicable policies and procedures. All procedural requirements for paperwork and hearing processes were followed." (*Id*. at ¶ 29 (quoting ECF No. 1-2 at p.9).) In this attachment, Defendant Chalupa indicates that the Division of Legal Services affirmed the SMP Panel's recommendation that Plaintiff be placed at security level ERH 1, noting the evidence in support included information presented from the written statement of the charging official, Plaintiff's testimony, and the letter that prompted the at-issue disciplinary proceedings. Defendant Chalupa also notes that Plaintiff had submitted multiple appeals relating to the delay in holding his hearing and also his complaints that he was found not guilty. Defendant Chalupa responds that Plaintiff's case was delayed due to an investigation by the Highway Patrol and that SMP documentation reflects that the SMP panel did find Plaintiff guilty. Defendant Chalupa recommends affirming the SMP as to procedure, evidence, and placement and adds that a final decision regarding Plaintiff's placement status would be deferred to the Bureau of Classification ("BOC"). (ECF No. 1-2 at p. 10.) Plaintiff alleges that Defendant Chalupa's determination constitutes a "direct act of deliberate indifference and discrimination, as well as a complete violation of [his] equal protection rights." (Pl.'s Compl. ¶ 30, ECF No. 1-1.)

On July 30, 2018, Defendant BOC representative Jeffrey Mustard issued a decision to place Plaintiff at security level ERH 1, offering the following explanation:

> On 2/27/18, inmate sent a letter attempting to cause the death of another by hiring a person to complete the task. He asked in the letter to a Vell Colemen of Toledo, Ohio to kill others. Inmate has a history of assault and threats on his previous incarcerations. A less restrictive means of housing this inmate in general population would cause an increase risk to a lower security level facility.

(ECF No. 1-2 at p. 11.)  Defendant Mustard indicates that he reviewed Plaintiff's RIB history, the Legal Services review, and the SMP recommendation.  According to Plaintiff, Defendant Mustard's decision violates his due process rights given that no outside charges have been filed against him.  According to Plaintiff, he has a right to be released from segregation.  Plaintiff also alleges generally that unspecified Defendants are attempting to send him to a supermax facility in Lucasville, Ohio.

In the "Legal Claims" section of his Complaint, Plaintiff alleges that Defendants Smith and Haren violated Ohio's policies and procedures, housed him in segregation for 66 days, and raised his security level, all of which he asserts implicate his due process rights.  (Pl.'s Compl. ¶¶ 40-41, ECF No. 1-1.)  Plaintiff also asserts that these Defendants discriminated against him because of his sex conviction in violation of his equal protection rights.  In addition, Plaintiff alleges that Defendants May and Byrd violated his due process rights "out of deliberate indifference."  (*Id*. at 42.)  He further maintains that Defendant Mustard violated his due process and Eighth Amendment rights by imposing cruel and unusual punishment.  Finally, Plaintiff asserts that Defendant Chalupa violated his due process rights by showing "deliberate indifference to the procedure violations" and the equal protection violations.  (*Id*. at ¶ 44.)

Plaintiff alleges that he has been injured in the form of psychological, mental, and emotional damage, as well as by exposure to black mold and asbestos.  Plaintiff requests both monetary and injunctive relief.

## II.

Congress enacted 28 U.S.C. § 1915, the federal *in forma pauperis* statute, seeking to "lower judicial access barriers to the indigent."  *Denton v. Hernandez*, 504 U.S. 25, 31 (1992).  In doing so, however, "Congress recognized that 'a litigant whose filing fees and court costs are

assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" *Id*. at 31 (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To address this concern, Congress included subsection (e) as part of the statute, which provides in pertinent part:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—
>
> \*   \*   \*
>
> (B) the action or appeal--
>
> > (i) is frivolous or malicious;
> >
> > (ii) fails to state a claim on which relief may be granted; or . . . .

28 U.S.C. § 1915(e)(2)(B)(i) & (ii); *Denton*, 504 U.S. at 31. Thus, § 1915(e) requires *sua sponte* dismissal of an action upon the Court's determination that the action is frivolous or malicious, or upon determination that the action fails to state a claim upon which relief may be granted. *See Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (applying Federal Rule of Civil Procedure 12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)).

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Further, a complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*,

6

550 U.S. at 557). Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In considering whether this facial plausibility standard is met, a Court must construe the complaint in the light most favorable to the non-moving party, accept all factual allegations as true, and make reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citations omitted). The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). In addition, the Court holds *pro se* complaints "'to less stringent standards than formal pleadings drafted by lawyers.'" *Garrett v. Belmont Cnty. Sheriff's Dep't*, No. 08-3978, 2010 WL 1252923, at *2 (6th Cir. Apr. 1, 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

**II.**

As a threshold matter, the Court notes that in an earlier-filed action, *Hairston v. Mrs. Maria*, Case No. 2:18-cv-378 (the "378 Case"), Plaintiff brings nearly identical due process claims relating to his confinement in segregation and complaining of the procedures employed during the RIB and SMP disciplinary hearings in March and April 2018. (*See* 378 Case, Compl. 11-12, ECF No. 8.) Plaintiff also complains of his cell conditions, specifically his exposure to asbestos and black mold in the 378 Case. Indeed, these very claims are the subject of a Motion for Judgment on the Pleadings in the 378 Case. (*See* 378 Case, ECF No. 47 at pp. 5-10 (arguing

7

that Plaintiff's allegations of mold and asbestos exposure fail to state a claim for unconstitutional prison conditions and that he has also failed to state a due process claim relating to his confinement in segregation or prison officials' failure to comply with state administrative rules or policies). For these reasons, it is **RECOMMENDED** that this Court **DISMISS** Plaintiff's due process claims relating to his confinement in segregation and the alleged violations of state administrative regulations and policies and also his claims relating to asbestos and mold exposure **WITHOUT PREJUDICE** to continuing to prosecute those claims in the 378 Case.

This leaves Plaintiff's claims for a due process violation relating only to his increased security level and also his equal protection claims, neither of which have merit.

**A.       Plaintiff's Due Process Claims Relating to his Security Level**

Plaintiff's due process claim relating to the change in his security level fails because he has no constitutionally protected liberty interest in his security level. "[T]he Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). "An inmate establishes a liberty interest when a change in conditions of confinement 'imposes atypical and significant hardship on [him] in relation to the ordinary incidents of prison life.'" *Williams v. Lindamood*, 526 F. App'x 559, 562 (6th Cir. 2013) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). "[A]n increase in security classification . . . does not constitute an 'atypical and significant' hardship in relation to the ordinary incidents of prison life because a prisoner has no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification." *Harbin–Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005) (internal quotation marks and citation omitted); *see also Moody v. Daggett*, 429 U.S. 79, 88 n.9 (1976)

(change in "prisoner classification" does not implicate a due process right); *Harris v. Truesdell*, 79 F. App'x 756, 759 (6th Cir. 2003) (holding that neither "punishment of more than 60 days of punitive segregation" nor a change in security classification "give rise to a protected Fourteenth Amendment Liberty interest"); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (holding that inmate's placement in disciplinary confinement or a change in security classification or housing assignment did not implicate the Due Process Clause). Because Plaintiff does not have a constitutional right to a particular security level or classification, it is **RECOMMENDED** that the Court **DISMISS** his due process claim relating to his change in security classification pursuant to § 1915(e)(2).

**B.     Plaintiff's Equal Protection Claims**

Plaintiff's equal protection claims likewise must be dismissed for failure to state a claim. To state an equal protection claim, a prisoner need only allege sufficient plausible facts to show "that a state actor intentionally discriminated against [him] because of membership in a protected class." *Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990) (internal quotation marks omitted), *abrogated in part on other grounds by King v. Harwood*, 853 F.3d 568, 580 n. 4 (6th Cir. 2017), *reh'g en banc denied*, 853 F.3d 568 (6th Cir. 2017), *petition for cert. filed*, (Aug. 15, 2017) (No. 17-260); *see also Herron v. Harrison,* 203 F.3d 410, 417 (6th Cir. 2000); *Copeland v. Machulis*, 57 F.3d 476, 480 (6th Cir. 1995) (citing *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 255-56 (1995)). Contrary to Plaintiff's apparent contention, individuals with "sex convictions" are not a protected class subject to the Equal Protection Clause. *Cutshall v. Sundquist*, 193 F.3d 466, 482 (6th Cir. 1999) (holding that "[c]onvicted sex offenders are not a suspect class" for purposes of claims under the Equal Protection Clause); *Catanzaro v. Carr*, No. 10-cv-14554, 2012 WL 2389913, at *4 (E.D. Mich. June 7, 2012)

("Prisoners and convicted sex offenders are not members of a protected class for equal protection purposes." (citations omitted)); *see also Jackson v. Jamrog*, 411 F.3d 615, 619 (6th Cir. 2005) ("[P]risoners are not considered a suspect class for purposes of equal protection litigation."). Because Plaintiff's status as an individual with a sex conviction does not constitute a protected class, it is **RECOMMENDED** that the Court **DISMISS** his equal protection claims pursuant to § 1915(e)(2).

### III.

For the reasons set forth above, Plaintiff motions for leave to proceed *in forma pauperis* under 28 U.S.C. § 1915(a)(1) and (2) (ECF Nos. 1 and 7) are **GRANTED**. In addition, it is **RECOMMENDED** this Court **DISMISS** Plaintiff's due process claims relating to his confinement in segregation and the alleged violations of state administrative regulations and policies and also his claims relating to asbestos and mold exposure **WITHOUT PREJUDICE** to continuing to prosecute those claims in the 378 Case. It is further **RECOMMENDED** that the remaining claims in this action, namely, Plaintiff's due process claims relating to his security classification and his equal protection claims, be **DISMISSED** for failure to state a claim pursuant to pursuant to § 1915(e)(2) and that Plaintiff's Motion for a Temporary Restraining Order (ECF No. 2) and his Motion for the Clerk to Make Service Copies (ECF No. 3) be **DENIED AS MOOT**.

The Clerk of Court is **DIRECTED** to mail a copy of this Order to Plaintiff and the prison cashier's office. The Clerk is further **DIRECTED** to forward a copy of this Order to the Court's financial office in Columbus. Finally, the Clerk is **DIRECTED** to send a copy of this order to the Ohio Attorney General's Office, 150 E. Gay St., 16th Floor, Columbus, Ohio 43215.

**PROCEDURE ON OBJECTIONS**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE